IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IGNACIO JACOBO, # R-68486, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 15-cv-703-MJR |
| ) | |
| DAVID P. HOLDER, ) | |
| MICHAEL P. ATCHISON, ) | |
| TIMOTY R. VEATH, ) | |
| BRANDON M. ANTHONY, ) | |
| C/O CARTER, ) | |
| C/O COWAN, ) | |
| C/O NORMAN, ) | |
| and UNKNOWN PARTY (Pontiac Warden), ) | |
| ) | |
| Defendants. ) | |

# MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff is currently incarcerated at Pontiac Correctional Center ("Pontiac"), where he is serving a life sentence. He brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, claiming that he was wrongfully found guilty of a disciplinary infraction while he was confined at Menard Correctional Center ("Menard"). He was punished with one year in segregation, and was kept in punitive segregation for the entire year even though the disciplinary action was expunged nearly two months before his term was up. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A.

According to the complaint, Plaintiff's cell was searched on August 20, 2012 (Doc. 1, p. 7). Gang-related material was found in legal property box #17031. Defendant Officer Holder issued a disciplinary report against Plaintiff for possession of this STG (Security Threat Group) material (Doc. 1, pp. 7, 18). Plaintiff immediately protested to Defendants

Holder and Norman that this box did not belong to him, and in fact was the property of his cellmate. He stated he was not a gang member, and asked the officers to check the property box numbers to verify his claim. They refused to do so, and Defendant Norman loudly told Plaintiff that he (Plaintiff) was not going to tell him how to do his job. Defendant Cowan signed off on the disciplinary report, and ignored Plaintiff when he tried to show documentation that the box was not his (Doc. 1, pp. 12, 18).

On August 23, 2012, Plaintiff appeared before the adjustment committee (Defendants Veath and Anthony). Plaintiff's ability to speak and understand English is limited, but Defendants Veath and Anthony refused to allow him an interpreter. Plaintiff pled not guilty to the disciplinary charge, and presented the hearing officers with his "State Loan Contract" documents for his legal box and property box (Doc. 1, pp. 8, 19-20). These papers showed that Plaintiff's correspondence/legal box was numbered 552684, and his property box was #057169 – neither of which matched the box (#17031) where the STG material was found. Disregarding this evidence, Defendants Veath and Anthony found Plaintiff guilty. In addition to the year of disciplinary segregation, Plaintiff's punishment included the loss of six months of good conduct credit and contact visits, and one year of C-Grade status and commissary restriction (Doc. 1, p. 21).

Plaintiff told Defendant Carter (Internal Affairs) that the property box where the STG material was found did not belong to him, and asked him to investigate and verify the documentation proving his claim. Likewise, Plaintiff spoke to Defendant Warden Atchison about the mistake, and asked him to investigate and look at the evidence. However, neither of these Defendants took any action, and Defendant Atchison approved the punishment recommended by the adjustment committee. Plaintiff states that Menard officials routinely

"rubber-stamp" the actions of their fellow officers to punish inmates for disciplinary infractions, regardless of exonerating evidence.

At some point during Plaintiff's time in segregation, he was transferred to Pontiac. On June 29, 2013, as a result of Plaintiff's grievance, the disciplinary action was expunged (Doc. 1, p. 22). However, the Unknown Party Defendant Warden of Pontiac continued to hold Plaintiff in segregation for the remainder of the year-long term, despite receiving notice that Plaintiff had been cleared of any wrongdoing (Doc. 1, p. 12).

Plaintiff raises claims that he was denied due process in the imposition of the disciplinary sanctions, and that the punishment imposed was cruel and unusual. He was deprived of access to the gym, yard, television, radio, and commissary, as well as physical access to the law library and contact visits/phone calls with his family (Doc. 1, p. 13). He now seeks compensatory and punitive damages (Doc. 1, p. 16).

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

Accepting Plaintiff's allegations as true, the Court finds that Plaintiff has articulated the following colorable federal causes of action for violation of his Fourteenth Amendment rights, which shall receive further review:

> **Count 1:** Defendants Holder, Norman, Cowan, Veath, and Anthony deprived Plaintiff of a liberty interest without due process, by subjecting him to one year in punitive segregation, where neither the disciplinary charge nor the finding of guilt was supported by any evidence;
>
> **Count 2:** Defendants Carter and Atchison allowed Plaintiff to be deprived of a liberty interest without due process, when they ignored his requests for them to review his exonerating evidence;

>**Count 3:** The Unknown Party Defendant-Warden of Pontiac deprived Plaintiff of a liberty interest without due process, when he failed to abide by the Director's decision to expunge Plaintiff's disciplinary charge, and unjustifiably kept Plaintiff in punitive segregation for approximately two more months.

However, Plaintiff's allegations that the Defendants subjected him to cruel and unusual punishment in violation of the Eighth Amendment fail to state a claim upon which relief may be granted. The conditions of Plaintiff's confinement in segregation, as described in the complaint, do not rise to the level of a serious deprivation of a basic human need, such as food, medical care, sanitation, or physical safety, that would violate the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). Plaintiff's Eighth Amendment claims (**Count 4**) shall be dismissed without prejudice.

## Count 1 – Defendants Holder, Norman, Cowan, Veath, and Anthony

The fact that Plaintiff's disciplinary charge and punishment were expunged from his record indicates that Plaintiff eventually received due process. However, this relief came too late to prevent him from serving out the majority of the year of segregation, and in fact was not effective in leading to his release before the year was up (see Count 3).

Under certain limited circumstances, an inmate punished with segregation[1] may be able to pursue a claim for deprivation of a liberty interest without due process of law. *See Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009). The initial inquiry is whether Plaintiff was denied procedural due process in the conduct of his disciplinary hearing. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974) (to satisfy due process concerns, inmate must be given advance written notice of the charge, the right to appear before the hearing panel, the right to call witnesses if prison safety allows, and a written statement of the reasons for the

---

[1] Plaintiff's punishment also included the loss of good conduct credits. Because that sentence credit was restored when Plaintiff's "conviction" for the disciplinary infraction was expunged, the doctrine of *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), does not bar his quest for damages in a civil rights action.

discipline imposed). Further, the disciplinary decision must be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994). Even a meager amount of supporting evidence is sufficient to satisfy this due process inquiry. *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007).

In Plaintiff's case, the denial of a Spanish-English interpreter raises due process concerns, but these are eclipsed by the absence of evidence of Plaintiff's guilt. The facts as described by Plaintiff indicate that the initial disciplinary charge filed by Defendants Holder, Norman, and Cowan lacked evidentiary support. Then at his hearing, Plaintiff's presentation of exculpatory evidence showing that the box containing the gang-related material was not his property suggests that Defendants Veath and Anthony found Plaintiff guilty without any supporting evidence at all. *See Supt., Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445 (1985); *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994). Indeed, the letter ruling that Plaintiff's disciplinary report should be expunged cited "exonerating evidence (wrong box number cited)" as one of the grounds for the action (Doc. 1, p. 22). This apparent denial of due process, coupled with the length of Plaintiff's disciplinary segregation, indicates that a factual inquiry into the conditions of his segregation is appropriate. *See Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009).

Even if Plaintiff's due process rights were violated during the adjudication of the disciplinary charge against him, more is required in order to sustain a claim that he was deprived of a protected liberty interest. An inmate has a due process liberty interest in being in the general prison population only if the conditions of his or her disciplinary confinement impose "atypical and significant hardship[s] . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir.

1997) (in light of *Sandin*, "the right to litigate disciplinary confinements has become vanishingly small"). For prisoners whose punishment includes being put in disciplinary segregation, under *Sandin*, "the key comparison is between disciplinary segregation and nondisciplinary segregation rather than between disciplinary segregation and the general prison population." *Wagner*, 128 F.3d at 1175.

The Seventh Circuit has elaborated two elements for determining whether disciplinary segregation conditions impose atypical and significant hardships: "the combined import of the duration of the segregative confinement *and* the conditions endured by the prisoner during that period." *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009) (emphasis in original). The first prong of this two-part analysis focuses solely on the duration of disciplinary segregation. For relatively short periods of disciplinary segregation, inquiry into specific conditions of confinement is unnecessary. *See Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005) (56 days); *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1997) (70 days) ("a relatively short period when one considers his 12 year prison sentence"). In these cases, the short duration of the disciplinary segregation forecloses any due process liberty interest regardless of the conditions. *See Marion*, 559 F.3d at 698 ("we have affirmed dismissal without requiring a factual inquiry into the conditions of confinement").

In Plaintiff's case, he was confined in segregation for a full year. In the context of Plaintiff's life sentence, even a one-year period of disciplinary segregation, standing alone, may not rise to the level of an unconstitutional deprivation of liberty. *See Marion*, 559 F.3d at 697-98. However, at this stage of the case, the duration is long enough to trigger an inquiry into the conditions of Plaintiff's confinement in segregation. *See Kervin v. Barnes*, 787 F.3d 833, 835 (7th Cir. 2015). The deprivations Plaintiff lists in his complaint – denial of yard, gym, contact

visits, and the like, may not amount to "atypical" or "significant" hardships when compared with the conditions of administrative segregation. However, **Count 1** shall proceed to allow Plaintiff to further develop the facts supporting his due process claim.

### Count 2 – Defendants Carter and Atchison

According to the complaint, neither Defendant Carter nor Defendant Atchison was directly involved in bringing the disciplinary charge against Plaintiff, or in conducting the hearing at which he was found guilty. It appears that Plaintiff requested each of these Defendants to investigate the matter and consider his exculpatory evidence only after the disciplinary hearing was concluded and his punishment was recommended.

Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under § 1983, the individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005) (internal quotations and citations omitted). At this stage, it is not clear whether Defendant Carter or Defendant Atchison were sufficiently personally involved in the imposition of Plaintiff's punishment for liability to attach. *See Burks v. Raemisch*, 555 F.3d 592, 595-96 (7th Cir. 2009) ("public employees are responsible for their own misdeeds but not for anyone else's[;]" prisoner cannot impose liability on any official merely by appealing to the official for help). However, Defendant Carter arguably had some responsibility to investigate possible misconduct by prison officials. Defendant Atchison had to give final approval to Plaintiff's disciplinary sanctions before they were implemented. Giving liberal construction to Plaintiff's claims at this stage, **Count 2** against Defendants Carter and Atchison shall be allowed to proceed.

**Count 3 – Unknown Pontiac Warden**

According to Plaintiff, the John Doe Defendant Pontiac Warden was informed of the June 29, 2013, letter directing prison officials to expunge the disciplinary action against Plaintiff (Doc. 1, p. 22).  However, even though there was no longer any reason to hold Plaintiff in segregation, the Pontiac Warden failed to release him back to general population.  Plaintiff had to endure nearly two more months in segregation before any action was taken.  It appears that he was only discharged from segregation when his original one-year "sentence" expired.

Based on these facts, Plaintiff may proceed with his due process claim against the Unknown Pontiac Warden in **Count 3**.

Although the Plaintiff's claim against the Defendant Pontiac Warden arose in the Central District of Illinois, where this Defendant may likely be found, he appears to be properly joined as a Defendant in this action pursuant to Federal Rule of Civil Procedure 20(a)(2). Count 3 shall therefore remain in this action at this time. Plaintiff shall note, however, that as the case progresses, the Court may deem it appropriate to sever Count 3 into a separate action, and transfer the severed case to the Central District of Illinois.

**Pending Motion**

Plaintiff's motion for recruitment of counsel (Doc. 3) shall be referred to the United States Magistrate Judge for further consideration.

**Disposition**

**COUNT 4** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

The Clerk of Court shall prepare for Defendants **HOLDER, ATCHISON, VEATH, ANTHONY, CARTER, COWAN, NORMAN,** and **WARDEN of PONTIAC**:  (1)

Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States**

**Magistrate Judge Stephen C. Williams** for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Williams for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action

for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: August 5, 2015**

<u>s/ MICHAEL J. REAGAN</u>
Chief Judge
United States District Court