## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IGNACIO JACOBO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 15-cv-0703-MJR-SCW |
| | ) |
| DAVID P. HOLDER, | ) |
| MICHAEL P. ATCHISON, | ) |
| TIMOTHY VEATH, | ) |
| BRANDON M. ANTHONY, | ) |
| C/O CARTER, | ) |
| C/O COWAN, | ) |
| C/O NORMAN, and | ) |
| UNKNOWN PARTY, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Ignacio Jacobo is currently incarcerated at the Pontiac Correctional Center. (Doc. 8, p. 1). On June 26, 2015, he brought this lawsuit pursuant to 42 U.S.C. § 1983, claiming that he was wrongfully found guilty of a disciplinary infraction while confined at Menard Correctional Center and wrongfully placed in segregation while confined at the Menard and Pontiac Correctional Centers. (*Id.*). This matter is currently before the Court on Defendants' motion to dismiss (Doc. 25). For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion.

## BACKGROUND

### 1. Plaintiff's Complaint

According to the allegations set forth in Plaintiff's complaint, on August 20, 2012,

Plaintiff's cell was searched and security threat group ("STG"), or gang-related, material was found.   (Doc. 1, p. 7).   This material was found in property box #17031, which was a property box that did not belong to Plaintiff.   (*Id.*).   However, Plaintiff was nonetheless placed in temporary confinement.   (*Id.*).   Plaintiff attempted to inform correctional officers Holder and Norman that the property box in question did not belong to him and that the STG material was not his; however, the officers would not allow Plaintiff to explain.   (*Id.* at 7-8).   Plaintiff requested that the officers check the property box number for the box containing the STG material to verify that the box was not Plaintiff's.   (*Id.* at 8).   Instead of checking the box number, Norman purportedly yelled at Plaintiff and told Plaintiff that he would not dictate to Norman his job assignment.   (*Id.*).   Holder issued a disciplinary report stating that unauthorized gang material was found in Plaintiff's cell in "Legal Box #17031."   (*Id.* at 18).   Another correctional officer named Cowan concurred with Holder's report, even though Plaintiff informed Cowan that the box in question did not belong to him and asked Cowan to examine Plaintiff's state loan contracts for his property boxes.   (*Id.* at 12, 18).

Three days later, on August 23, 2012, Plaintiff appeared before Menard's Adjustment Committee for a hearing on the disciplinary report.   (*Id.* at 8).   Though Plaintiff struggles with English, he was able to plead "not guilty" to the charges against him and presented evidence on his own behalf.   (*Id.* at 8–9).   As a part of his defense, Plaintiff attempted to present to the committee his property box, legal box, and state contract documents.   (*Id.* at 8–9).   The contract documents demonstrated that the

number for Plaintiff's legal box is 552684 and his personal box number is 057169.   (*Id.* at 8).   The property box containing the STG material was numbered 17031, and Plaintiff alleges it belonged to his cellmate at the time.   (*Id.* at 7, 9). However, Defendants Timothy Veath and Brandon Anthony, who sat on the Adjustment Committee, refused to examine Plaintiff's evidence.   (*Id.* at 3, 10).   They found Plaintiff guilty of Gang or Unauthorized Organization Activity and he was sentenced to one year C Grade status, one year in segregation, one year revocation of commissary restriction, six months contact visits restriction, and the loss of six months of good conduct credit.   (*Id.* at 21).

Included among the documents Plaintiff attached to his complaint are the two state loan contracts and the Adjustment Committee's final report.   The contract indicates it is for a personal property storage box.   (*Id.* at 19).   Plaintiff's last name and inmate number are listed on the document, as is the serial number "057169."   (*Id.*).   The state loan contract indicates that it is for a "correspondence storage box,"[1] and also lists Plaintiff's last name and inmate number.   (*Id.* at 20).   Though the numbers are somewhat hard to read, the serial number listed looks to be 552684.[2]   (*Id.*).

In the Adjustment Committee report attached to Plaintiff's complaint, the Committee provided the following as the basis for its decision:

---

[1] Plaintiff indicates in his complaint that this is his legal box.   (Doc. 1, p. 9).

[2] The numbers are somewhat difficult to read, and the serial number could also read 552534.   However, as the Court is deciding a motion to dismiss, it must treat all well-pleaded allegations as true, so the Court accepts as true that the serial number on the state loan contract is 552684, as laid out in the body of Plaintiff's complaint. Regardless, the Court can easily determine that the serial number is not 17031.

> BASED ON, R/O CONDUCTED A SHAKE DOWN OF CELL WEST 2-17 OCCUPIED BY INMATE JACOBO R68486. R/O FOUND STG RELATED MATERIAL IN INMATE JACOBO'S CORRESPONDENCE BOX #17031. INTEL VERIFIED THE MATERIAL WAS STG RELATED.

(*Id.* at 21).   The report was signed by Defendants Veath and Anthony.   (*Id.*).

After the Adjustment Committee's ruling, Plaintiff spoke with Correctional Officer Carter from Internal Affairs and Menard Warden Michael Atchison regarding the ruling.   (*Id.* at 11).   He asserted that the property box containing the STG material was not his and asked both men to investigate.   (*Id.*).   Both refused.   (*Id.*).

Roughly ten months later, on June 29, 2013, the Illinois Department of Corrections' Administrative Review Board overturned the Adjustment Committee's ruling, citing "exonerating evidence (wrong box number cited)" and failure to comply with certain state regulations.   (*Id.* at 22).   Menard was ordered to expunge the report it issued regarding the STG material in Plaintiff's cell.   (*Id.*).   Additionally, the Board restored Plaintiff's good time credit that had been deducted.   (*Id.*).

Even after the Board ordered the ruling expunged, Plaintiff remained in segregation for the remainder of the one year term to which the Committee sentenced him.   (*Id.* at 12).   A copy of the Board's ruling was sent to the Warden of Pontiac, where Plaintiff had been transferred, but the Warden of Pontiac allowed Plaintiff to remain in segregation.   (*Id.*).   During his stint in segregation, Plaintiff was denied commissary, gym, yard, physical access to the law library, television, radio, and movement.   (*Id.* at 13).   Plaintiff was also denied telephone calls and contact visits with his family.   (*Id.*).

He was permitted all of these things prior to placement in segregation.   (*Id.*).   Plaintiff alleges that his time in segregation "caused substantial atypical hardship not normally experienced by prisoners in general population."   (*Id.* at 10–11).

## 2.  Procedural History

In his complaint, Plaintiff named as defendants Officers Holder, Norman, Cowan, and Carter; Adjustment Committee members Veath and Anthony; Menard Warden Atchison; and the Pontiac Warden.   (Doc. 1, p. 2–4).   Shortly after the complaint was filed, the Court conducted a merits review as required by 28 U.S.C. § 1915A.   As a part of that review, the Court found that Plaintiff had articulated the following three colorable causes of action for violations of his Fourteenth Amendment rights:

> **Count 1:** Holder, Norman, Cowan, Veath, and Anthony deprived Plaintiff of a liberty interest without due process by subjecting him to one year in punitive segregation, where neither the disciplinary charge nor the finding of guilt was supported by any evidence.
>
> **Count 2:** Carter and Atchison allowed Plaintiff to be deprived of a liberty interest without due process when they ignored his requests for them to review his exonerating evidence.
>
> **Count 3:** The Warden of Pontiac deprived Plaintiff of a liberty interest without due process when he failed to abide by the Director's decision and unjustifiably kept Plaintiff in punitive segregation for approximately two more months.

(Doc. 8, p. 3–4).   The Court dismissed a fourth count that was based on the Eighth Amendment.   (*Id.* at 4).   After being served with the complaint, Defendants filed a motion to dismiss, maintaining that Plaintiff failed to state a claim that any one of them had deprived him of a liberty interest without due process of law.

Page **5** of **18**

## ANALYSIS

### 1. Motion to Dismiss Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move for dismissal of a complaint on the grounds that the complaint fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, a complaint must present enough facts to establish an inference that the allegations in the claim are plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As the Supreme Court explained in *Iqbal*, a litigant need not provide "detailed factual allegations," but he must provide more than an "unadorned, the-defendant-unlawfully-harmed-me accusation," meaning that he must include some factual content in the complaint. *Id.* Those facts must allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Moreover, the facts in the complaint must show "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

In considering a motion to dismiss for failure to state a claim, the Court must accept as true all well-pled allegations and draw all reasonable inferences in favor of the plaintiff. *Chaney v. Sub. Bus. Div. of Reg. Transp. Auth.*, 52 F.3d 623, 626-27 (7th Cir. 1995). In situations where a plaintiff is proceeding *pro se*, the Court will construe the complaint liberally. *Riley v. Kolitwenzew*, 526 F. Appx. 653, 657 (7th Cir. 2013).

### 2. Prison Discipline Due Process Claims

To make out a due process claim in connection with prison discipline, a prisoner must allege that he has a liberty or property interest that prison officials have interfered

with, and that the procedures he was afforded upon that deprivation were constitutionally deficient. *Scruggs v. Jordan*, **485 F.3d 934, 939 (7th Cir. 2007)**.

> **a. Constitutionally-Deficient Process**

As to disciplinary process, the Constitution requires that a prisoner receive (1) advanced written notice of the charge against him; (2) the right to appear before an impartial panel; (3) the right to call witnesses and present evidence if prison safety allows; and (4) a written statement of the reasons for the discipline imposed. *Wolff v. McDonnell*, **418 U.S. 539, 563-69 (1974)**. In addition, the disciplinary decision must be supported by "some evidence." *Black v. Lane*, **22 F.3d 1395, 1402 (7th Cir. 1994)**. A meager amount of supporting evidence is sufficient to clear that hurdle. *Scruggs*, **485 F.3d at 941**. The "some evidence" standard falls below the preponderance of the evidence standard, and only requires a decision not to be arbitrary or without support. *McPherson v. McBride*, **188 F.3d 784, 786 (7th Cir. 1999)**. That said, a disciplinary decision must have "some factual basis." *Id.* Once more, the evidence relied on in reaching the disciplinary decision must "bear some indicia of reliability." *Scruggs*, **485 F.3d at 941**. While a court reviewing a prison disciplinary proceeding will not consider exculpatory evidence solely because it could have supported a result different from the one reached by the board, it must satisfy itself that the evidence the board relied on bears a "sufficient indicia of reliability." *Meeks v. McBride*, **81 F.3d 717, 721 (7th Cir. 1996)**.

Defendants Veath and Anthony argue that Plaintiff's claims against them should be dismissed because the evidence relied upon by the Adjustment Committee satisfies

the "meager amount of supporting evidence" standard. Defendants assert that the mere possession of STG material in Plaintiff's cell satisfies the evidentiary standard, and that this Court is barred from considering the weight of the evidence presented at the hearing. However, in making their argument based on sufficiency of the evidence, Defendants overlook the alleged procedural problems with Plaintiff's hearing. *See Ellison v. Zatecky*, **820 F.3d 271, 274 (7th Cir. 2016).** Separate from the question of the sufficiency of the evidence, a prisoner has a right to present documentary evidence at a hearing. However, Plaintiff's complaint alleges that Veath and Anthony refused to examine Plaintiff's evidence demonstrating that the property box containing STG material did not belong to him. Unless the evidence is cumulative or threatens safety, a committee "cannot refuse to consider an inmate's evidence simply because other evidence supports a finding of guilt." *Id.* Here, the evidence Plaintiff sought to introduce consisted of his property box and contracts demonstrating the serial numbers of the boxes issued to him. Such evidence was not cumulative and would not have threatened safety. In alleging that Veath and Anthony failed to consider Plaintiff's loan contracts and property box, the Court finds that Plaintiff has successfully pleaded that those defendants failed to afford him the necessary process at his hearing. *See id.* **at 271 (rights violated where prisoner was not allowed to present evidence at hearing, including evidence showing that heroin found in cell was found in a different cell).**

Additionally, the Court finds that Plaintiff's complaint alleges that the Adjustment Committee's finding was not supported by any evidence. In asserting that the Court

may not assess the weight of the evidence considered by prison officials, the Defendants cite to the Seventh Circuit's opinion in *Viens v. Daniels*, **871 F.2d 1328, 1335 (7th Cir. 1989)**.   While *Viens* says that courts generally may not weigh the evidence considered at the disciplinary hearing, the Seventh Circuit also held that the evidence used to discipline a prisoner must "bear sufficient indicia of reliability."   *Id*.   Only if and when a court finds the evidence reliable is it required to end its analysis of the evidence.   *Id.* In determining whether evidence is reliable, the Court may consider exculpatory material that undercuts the reliability of the evidence that the prison officials used.   *Id.*

Accepting the allegations in Plaintiff's complaint as true, the evidence against Plaintiff might not have been sufficiently reliable to justify the disciplinary report and Adjustment Committee report against him.   The Adjustment Committee's report indicates that the STG material was found in Plaintiff's cell in "inmate Jacobo's correspondence box #17031."   The report does not indicate how the Adjustment Committee found that box 17031 was Jacobo's, and either way, that finding is undercut by Plaintiff's state loan contracts for his property boxes, which he was not allowed to present.   *See Meeks v. McBride*, **81 F.3d 717, 718-19, 720, 721 (7th Cir. 1996) (evidence that prisoner identification number on toxicology report was not plaintiff's number negated reliability of evidence used by prison disciplinary board to determine prisoner had smoked marijuana in his cell).**   The loan contracts clearly list serial numbers that are different from the serial number of the offending property box that is listed on the face of the disciplinary report and the Adjustment Committee report.   The

allegations in the complaint indicate that the disciplinary report and the Committee's finding were based on the fact that the STG material was found in a property box located in Plaintiff's cell.   If that is true, the disciplinary ruling might not satisfy the "some evidence" standard, meaning that dismissal at this early stage is improper.

A few cases help to flesh the point out.   In *Austin v. Pazera*, **779 F.3d 437, 438 (7th Cir. 2015)**, the plaintiff-inmate was disciplined following a prison proceeding for attempting to smuggle cigarettes in or out of the prison while the inmate was doing repairs in an office crawl space.   The only evidence was an officer's statement that he found five packs of cigarettes in the crawl space, but four other inmates also had access to the crawl space; all five of the inmates had been in the crawl space the same day that the plaintiff was in the space; and there was no evidence presented at the hearing as to why the other inmates weren't questioned about the cigarettes.   Given those problems, the Seventh Circuit found that the evidence presented did not rise to the "some evidence" standard.   Similarly, in *Broussard v. Johnson*, **253 F.3d 874, 875 (5th Cir. 2001)**, a prison disciplinary board convicted an inmate of possessing contraband bolt cutters intended for use in an escape.   The only reliable evidence linking the inmate to the bolt cutters was the fact that the bolt cutters were found in the kitchen where the inmate worked.   However, the court noted that other inmates had access to the kitchen, and, therefore, the mere fact that the contraband was found in the kitchen where the inmate worked was not sufficient to satisfy the "some evidence" standard.   *Id.*

Like *Austin* and *Broussard*, the allegations in Plaintiff's complaint demonstrate

Page **10** of **18**

that, since Plaintiff had a cellmate, Plaintiff was not the only inmate with access to his cell.   Therefore, the mere fact that the STG material was found in a box in Plaintiff's cell does not constitute "some evidence" to show that Plaintiff possessed the material. Indeed, Plaintiff alleges that the box with the material belonged to his cellmate. Further, the evidence here is even less probative than the evidence in *Austin* and *Broussard* since Plaintiff's contracts show his property boxes have different numbers than the box in which the material was found.   As such, the complaint sufficiently alleges that Plaintiff was issued a report and disciplined without an adequate basis.

Since Plaintiff has alleged a constitutionally deficient process before the Committee, he may maintain a cause of action against the Committee's supervisor, Warden Atchison of Menard.   A prison supervisor may be held liable for the acts or omissions of subordinates where, with knowledge of the subordinates' conduct, he approves of the conduct and the basis for it.   ***Kernats v. O'Sullivan*, 35 F.3d 1171, 1182 (7th Cir. 1994)**; ***Jones v. City of Chicago*, 856 F.2d 985, 992-93 (7th Cir. 1988).**   Though Plaintiff alleges that he merely asked Defendant Atchison to review his exculpatory evidence after the Adjustment Committee's ruling, Atchison's name and signature are on the Adjustment Committee report attached to the complaint.   Plaintiff's claim that he told Defendant Atchison about the exculpatory evidence, coupled with Atchison's signature as a supervisor on the Adjustment Committee report, provides a sufficient allegation that Defendant Atchison knew about the deficient process afforded at the hearing and approved of it.   That's enough to proceed past a motion to dismiss.

As for Defendants Holder and Cowan, who issued the disciplinary report against Plaintiff, the Seventh Circuit has never definitively resolved whether an inmate may bring a due process claim against a report issuer, instead holding that no cause of action arises for a false disciplinary report where the inmate was afforded due process at the subsequent hearing.  *E.g., Lagerstrom v. Kingston*, **463 F.3d 621, 625 (7th Cir. 2006);** *McPherson v. McBride*, **188 F.3d 784, 787 (7th Cir. 1999);** *Hanrahan v. Lane*, **747 F.2d 1137, 1141 (7th Cir. 1984).**  In making those rulings, though, the Seventh Circuit has hinted that where an inmate is *not* afforded due process subsequent to the issuance of a fraudulent disciplinary report, the inmate likely has a cause of action against those who issued the fraudulent report, too.  District court opinions in this circuit back up that view.  *See Marshall v. J.W. Fairman*, **951 F. Supp. 128 (N.D. Ill. 1997) (cause of action existed where prisoner alleged false report and lack of due process at later hearing).**

Given this authority, the Court finds the facts alleged in Plaintiff's complaint are sufficient to maintain a claim against Holder and Cowan at this stage.  As indicated above, Plaintiff's complaint alleges he was not afforded due process at the adjustment committee hearing after Holder wrote the initial disciplinary report.  Therefore, to maintain an action against Defendants Holder and Cowan, the question becomes whether Plaintiff alleges they fraudulently wrote him a disciplinary report.  The facts of the complaint assert that Holder and Cowan willfully refused to examine evidence demonstrating Plaintiff was not in possession of the STG material and nonetheless issued the disciplinary report.  The Court finds little distinction between knowingly

crafting a false disciplinary report and willfully burying one's head in the sand in order to shield oneself from information demonstrating an inmate's innocence regarding a prison infraction.  *See* S<span>EVENTH</span> C<span>IRCUIT</span> P<span>ATTERN</span> J<span>URY</span> I<span>NSTRUCTIONS</span>, C<span>RIMINAL</span> **4.10**, K<span>NOWINGLY</span>—D<span>EFINITION</span> **("You may find that the defendant acted knowingly if you find beyond a reasonable doubt that he had a strong suspicion that [state fact as to which knowledge is in question] and that he deliberately avoided the truth.");** *see also Global-Tech Appliances, Inc. v. SEB S.A.*, **563 U.S. 754, 770 (2011) (noting the basic requirements for the doctrine of "willful blindness" in the civil context to be "(1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact")**. The facts in Plaintiff's complaint are sufficient for Plaintiff to maintain an action against Holder and Cowan for violations of Plaintiff's due process rights at the pleadings stage. That said, as facts develop through discovery, Holder and Cowan could prevail at summary judgment.  It is possible that after the close of discovery, Plaintiff may be unable to put forth facts supporting his allegations surrounding the issuance of the disciplinary report or that he was not afforded due process at the hearing.

Regarding Defendants Norman and Carter, however, upon closer examination of the facts alleged in the complaint, the Court finds that Plaintiff has failed to state a cause of action against these defendants, meaning that justice requires the Court to reconsider its ruling in the threshold order letting the complaint proceed against them.  Plaintiff merely alleges that he asked Carter and Norman at various times to examine his

exculpatory evidence, and that both of them refused.   Plaintiff does not allege that these defendants actually issued his disciplinary report or that they were involved in Plaintiff's finding of guilt before the Committee, and neither one appears on the report. As there is a lack of allegations demonstrating their personal involvement in a due process violation, these two defendants must be dismissed from the case.   *See Walker v. Rowe*, **791 F.2d 507, 508 (7th Cir. 1986) (finding that, in a suit brought by guards against certain officials for injuries and deaths resulting from a prison riot, many of the grounds upon which the plaintiffs sought to recover failed, in part, because they sought to hold the defendants responsible for acts or omissions committed by others)**.

### b.  Deprivation of a Liberty Interest

In addition to pleading a violation of procedure, in order to state a claim for a due process violation, Plaintiff must also demonstrate a deprivation of a liberty interest. *Sandin v. Connor*, **515 U.S. 472, 487 (1995)**.   To show a deprivation, Plaintiff alleges that he was placed in disciplinary segregation for a year.   Placement in disciplinary segregation implicates a liberty interest when the conditions of segregation impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."   *Id.* **at 485**.   In determining whether a liberty interest is implicated, courts look to "the combined import of the duration of the segregative confinement and the conditions endured."   *Hardaway v. Meyerhoff*, **734 F.3d 740, 743 (7th Cir. 2013)**.

Defendants argue that Plaintiff has not sufficiently alleged that the conditions experienced by him in segregation are atypical to the conditions experienced in ordinary

prison life.   The Court finds, however, that the length of Plaintiff's confinement in segregation demands inquiry into the facts of Plaintiff's segregation.   The Seventh Circuit's opinion in *Marion v. Columbia Correctional Institution*, **559 F.3d 693, 695-97 (7th Cir. 2009)**, provides useful guidance.   In that case, an inmate brought a claim for a due process violation concerning a disciplinary ruling that netted him 240 days in disciplinary segregation.   The district court dismissed the inmate's complaint on the grounds that the stay in segregation did not subject him to atypical and significant hardship, but the Seventh Circuit reversed.   It noted that, in determining whether a stay in disciplinary segregation implicated a liberty interest, courts must examine both the length of the segregation as well as the conditions endured by the inmate during that period.   *Id.* **at 697**.   After examining its post-*Sandin* conditions of segregation cases, the court stated that "it is clear that a term of segregation as lengthy as Mr. Marion's requires scrutiny of the actual conditions of segregation."   *Id.* **at 698**.   As with the Defendants in the present suit, the *Marion* defendants argued that the inmate could not state a claim for a due process violation because he could not demonstrate harsher conditions in segregation.   *Id.* **at 699.**   However, the Seventh Circuit held that such an argument was premature at the pleading stage, and found that Marion had put the defendants on notice of his allegations that he was denied due process with 240 days segregation.   *Id.*

Plaintiff's suit is quite similar to *Marion*, and a factual inquiry into the conditions of his segregation is warranted.   Plaintiff alleges he was in segregation for a total of one year, which exceeds the length of time that *Marion* said necessitated a factual inquiry.

Page **15** of **18**

In addition, Plaintiff has pleaded that while in segregation, he suffered "substantial atypical hardship not normally experienced by prisoners in general population." Though the Defendants argue that this allegation is conclusory, the Court finds that Plaintiff's allegations as to his placement in segregation, taken together, including the length of time spent in segregation, are sufficient to satisfy Rule 8 of the federal rules and put the Defendants on notice of a deprivation of a liberty interest resulting in a due process violation. The Court's finding, however, should not be construed as an opinion on the merits of Plaintiff's claim. In order to survive summary judgment, Plaintiff will have to set forth facts demonstrating that the conditions of his confinement constituted an atypical and significant hardship compared to the general prison population.

Further, the Court's finding that Plaintiff has sufficiently pleaded the deprivation of a liberty interest resulting from placement in segregation extends to Plaintiff's claim against the warden of Pontiac. Plaintiff alleges that the Pontiac warden allowed him to remain in disciplinary segregation for the last two months of his sentence by the Adjustment Committee, after the Board overturned the committee's findings. Pontiac's warden maintains that the sixty additional days spent in disciplinary segregation do not constitute a sufficient amount of time to implicate a liberty interest. However, while Plaintiff's claim against the Pontiac warden only implicates two months of segregation, that two months of segregation comes as part of a total one year in segregation. If Plaintiff suffered an atypical and substantial hardship while placed in segregation at the hands of the Menard Committee, he did not simply cease to suffer such harm in

segregation the moment the Board expunged the committee's finding.   If Plaintiff was suffering such hardship before Pontiac's warden allowed him to remain in segregation, then he almost certainly continued to suffer it after.   Therefore, since the allegations in Plaintiff's complaint assert that Plaintiff's confinement to segregation at the hands of Pontiac's warden was in continuity with the ten months spent in segregation at the hands of the Adjustment Committee, a factual inquiry into the conditions of Plaintiff's segregation solely at the hands of Pontiac's warden is warranted.

Plaintiff also claims that he lost another liberty interest, namely the good time credits he earned during his tenure in the Department of Corrections.   To be sure, inmates have a liberty interest in good time credits that are earned and must be afforded due process before they are revoked.   *Scruggs*, **485 F.3d at 939**.   However, Defendants argue that Plaintiff cannot maintain an action for revocation of his good time credits since his credits were restored by the Board.   Defendants assert that since his good time credits were restored, Plaintiff cannot demonstrate he suffered any deprivation.

The Court has located a Seventh Circuit opinion which addresses this issue.   In *Whitford v. Boglino*, **63 F.3d 527, 529-30 (7th Cir. 1995)**, an inmate brought a § 1983 action for violation of his due process rights after a prison adjustment committee convicted him of assault.   Among the sanctions issued as part of the committee's ruling, the inmate lost six months of good time credit, which he later earned back.   In briefly examining whether the inmate possessed a liberty interest in the good time credit, the court found that "[t]he loss of good time credits would affect the duration of Whitford's

Page **17** of **18**

sentence.   However, he later earned them back, rendering any suit concerning the loss of good time credits moot." *Id.*   Though the Seventh Circuit only briefly, and almost as an aside, addressed the issue of restored good time credits, the court's holding on the issue is clearly stated and cannot be ignored by this Court.   Therefore, upon further examination, justice requires the Court to reconsider its threshold finding as to the good time credit issue.   Because Plaintiff alleges that his credits were restored to him, Plaintiff has failed to state a claim for relief relating to the revocation of those credits.

### CONCLUSION

For the reasons stated above, Defendants' motion to dismiss (Doc. 25) is **GRANTED IN PART** and **DENIED IN PART**.   Plaintiff hasn't alleged sufficient personal involvement on the part of Defendants Carter and Norman, so they are both **DISMISSED without prejudice**.   In addition, to the extent that Plaintiff seeks to recover against the remaining defendants for loss of his good time credits, those claims are **DISMISSED with prejudice**.   Defendants' motion is otherwise **DENIED**.   Plaintiff may proceed with his due process claims against the remaining defendants in Counts 1, 2, and 3 to the extent the claims relate to his placement in disciplinary segregation.

**IT IS SO ORDERED.**

**DATED:   September 23, 2016**

/s/ **Michael J. Reagan**
**Chief Judge Michael J. Reagan**
**United States District Court**